IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESTATE OF WILLIAM RYLAND  \*
MATTERN III, et al.  \*
                                                       \*
v.                                                   \*   Civil No. JFM-02-1109
                                                       \*
HONEYWELL INTERNATIONAL, INC.  \*
                                                       \*
\*\*\*\*\*

MEMORANDUM

This suit arises under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiffs, comprised of the estate of William Ryland Mattern III, the estate's legal representative, and two beneficiaries of the estate, filed suit alleging negligent processing of the decedent's benefits distribution on the part of Honeywell International, Inc. ("Honeywell"), the decedent's wife's employee retirement plan administrator. Honeywell filed a motion for summary judgment. For the reasons set forth below, I will grant defendant's motion.

I.

William Ryland Mattern III was married to Mildred Mattern until her death on July 1, 2000. At the time of her death, Mrs. Mattern was a participant in an ERISA plan administered by Honeywell, her former employer. She had named Mr. Mattern as the beneficiary of her interest in the plan, and he became the rightful owner of that interest upon her death.

Thereafter, Mr. Mattern contacted Honeywell to inform the plan administrator of his wife's death and obtain the proper forms to have his interest (formerly his wife's interest) in the

plan distributed to him.[1] In response, Honeywell sent a letter providing Mr. Mattern with instructions explaining his options for having the funds disbursed, along with several forms – a Separation Due to Death form, an Income Tax Withholding Notification and Election form, and a beneficiary designation form.

Mr. Mattern completed most of the forms and returned them to Honeywell. He chose to have his interest in the account rolled over into an IRA with Provident Bank. A beneficiary designation form, however, was not returned to Honeywell. On December 5, 2000, Honeywell received the forms and attempted to begin processing the rollover as requested. Due to some computer difficulties, Honeywell had only partially completed its processing of Mr. Mattern's request when Mr. Mattern died on December 28, 2000.

Because the rollover had not yet occurred and Mr. Mattern died without a completed beneficiary designation form, Honeywell held the funds for distribution to Mr. Mattern's estate. On February 1, 2001, Honeywell received instructions from the representative of the estate. On February 2, 2001, Honeywell sent a check for $264,629.36, representing the value of Mr. Mattern's account balance on that day, to the estate.

As a result of the delay, the beneficiaries of the estate claim they had to pay approximately $41,000 in capital gains taxes that could have been avoided if the funds had been rolled over prior to Mr. Mattern's death. The funds also generated $9,000 in commission for the personal representative by increasing the value of the estate being probated. Plaintiffs have

---

[1] The amount of time before this call is in dispute. The Mattern estate claims Mr. Mattern telephoned just days after his wife's death in July and had to call again in November when he had not received any information from Honeywell regarding the account. Honeywell claims the initial contact was the November 27 phone call. This dispute is ultimately irrelevant.

alleged a breach of fiduciary duty and requested $50,000 in compensatory damages, $100,000 for "ERISA violations," and another $500,000 in punitive damages because Honeywell allegedly acted deliberately to injure plaintiffs.

II.

ERISA is "a 'comprehensive and reticulated statute,' the product of a decade of congressional study of the Nation's private employee benefit system." *See Mertens v. Hewitt Assoc.*, 508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)). Courts should be "'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 712 (2002) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). The statute details nine possible avenues for civil enforcement, each delineating specific parties who can sue for specific violations and receive specific types of relief. *See* 29 U.S.C. § 1132(a) ("ERISA § 502(a)"). Plaintiffs rely upon both the second and third civil enforcement mechanisms in fashioning their complaint.[2] Upon examination of the statute and the relevant case law, however, it is clear neither of these enforcement mechanisms provide the type of relief plaintiffs seek.

Plaintiffs seek recovery for an alleged breach of fiduciary duty. They claim the plan administrator, Honeywell, has breached its duty to Mr. Mattern by failing to make the lump sum distribution in a timely fashion or to advise Mr. Mattern of the importance of a completed

---

[2] For purposes of this motion, I will assume plaintiffs would be able to establish a breach of the plan administrator's fiduciary duties because the ultimate success or failure of the claim on the merits is irrelevant to the legal arguments made by defendant in support of this motion.

beneficiary designation form during the interim period prior to such distribution. Under § 502(a)(2), a beneficiary may bring a civil action for appropriate relief based on a breach of a fiduciary duty under ERISA. *See* 29 U.S.C. §§ 1109 ("ERISA § 409"), 1132. The Supreme Court, however, has made it abundantly clear that suits for breach of fiduciary duty under § 502(a)(2) cannot be for individualized relief but must be for relief that inures to the plan itself. *See Russell*, 473 U.S. at 142, 144 (explaining the provision's "draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than the rights of an individual beneficiary"). The plaintiffs have requested no relief that would inure to the benefit of the plan, and suit is therefore inappropriate under § 502(a)(2).

As an alternative, plaintiffs assert their suit may be brought under § 502(a)(3). *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (allowing plaintiffs to bring a claim for breach of fiduciary duty under § 502(a)(3)). Section 502(a)(3) allows a civil action to be brought:

> [B]y a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provision of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs maintain that their suit is requesting "appropriate equitable relief" for ERISA violations and may move forward under this provision of the Act.[3] The outcome of this motion therefore turns on whether the relief requested by the

---

[3] Plaintiffs have not clearly identified any provisions of the plan or of ERISA itself that have been violated by the defendants or that need to be enforced. However, because the Supreme Court has held that a breach of fiduciary duty claim may be brought under this section, *see Varity Corp.*, 516 U.S. at 510-13, I will assume *arguendo* that plaintiffs could prove such a violation.

plaintiffs fits under the rubric of "appropriate equitable relief."

The Supreme Court has narrowed the definition of "appropriate equitable relief" under § 502(a)(3) to exclude the type of relief being requested by plaintiffs. Clearly, the phrase "appropriate equitable relief" does not encompass legal remedies, such as money damages. *See Mertens*, 508 U.S. at 255 ("Money damages are, of course, the classic form of legal relief."). The Court has further explained that "appropriate equitable relief" under § 502(a)(3) does not even include all forms of relief formerly available in a court of equity because a court of equity had the power in many situations, including those involving enforcement of a trust, to fashion legal remedies "which would otherwise be beyond the scope of its authority." *See Mertens*, 508 U.S. at 256 (quoting 1 J. Pomeroy, Equity Jurisprudence § 181, p.257 (5th ed. 1941)) (internal quotation marks omitted). Rather, the phrase was intended to limit the scope of such relief to the forms of equitable relief "*typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Id.* (emphasis in original).

Even restitution is not always available under § 502(a)(3). In *Great-West Life & Annuity Insurance Co. v. Knudson*, the Court drew a distinction between legal restitution and equitable restitution. *See Great-West*, 122 S. Ct. at 715, 719 (holding that equitable restitution is available, but that legal restitution is not). The Court reasoned, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 714-15.

Honeywell has disbursed to the estate all of the funds formerly constituting the account of Mr. Mattern. It is no longer in possession of any funds or property that could be restored to plaintiffs. Despite plaintiffs' attempts to portray their claims as seeking equitable relief, it is

clear they seek legal remedies. *See Mertens*, 508 U.S. at 255 (noting that petitioners "dance around the word," but are actually seeking compensatory damages). Compensatory damages based on the alleged "ERISA violations" and punitive damages based on the same conduct are beyond the scope of "appropriate equitable relief."

Similarly, plaintiffs' request for reimbursement for funds expended to cover the capital gains taxes on their inheritance or for the increased representative's commission would involve monies never in the defendant's possession at all. Payment of such monies would constitute compensatory damages – damages based on the personal liability of the defendant. If this claim could be characterized as one for restitution (and I do not think it can be), then it is certainly a claim for "legal restitution," not "equitable restitution." *See Great-West*, 122 S. Ct. at 714-17. Whether the relief sought is "legal restitution" or money damages for the consequential harm of defendant's delay in processing the request is immaterial. Both are barred as forms of relief a plaintiff can seek under § 502(a)(3) of ERISA.

The closest plaintiffs come to asserting a claim requesting equitable relief would be a rather vague assertion that defendant has been unjustly enriched by the use of funds in Mr. Mattern's account during the alleged delay in disbursing them. This claim fails, however, because the defendant merely holds these funds in trust for the beneficiaries of the plan. It has not been enriched, unjustly or otherwise, by the use of these funds during the period of alleged delay.[4] Plaintiffs have failed to identify funds or property in defendant's possession that

---

[4] Similarly, the plan itself did not benefit from the use of these funds because they are invested on behalf of the beneficiaries. As pointed out by plaintiffs, Mr. Mattern's account actually decreased in value during the alleged period of delay in disbursement. The difference in the amount that would have been disbursed immediately after Mrs. Mattern's death and the

6

rightfully belong to plaintiffs.

Plaintiffs claim this interpretation of the statute creates a "right without a remedy," and that this cannot be what Congress intended. To support the assertion that ERISA would not create a right without a remedy, plaintiffs cite *Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001). In *Griggs*, the district court held the plaintiff had been harmed when, at his company's urging, he took an early retirement based on misrepresentations regarding the tax consequences of an early lump sum benefit he would receive as part of his compensation. *See id.* at 374-75. The company discovered, prior to his retirement, that the employee would not be able to defer taxation on this lump sum distribution, but did not inform him of this and let him retire early. *See id.* at 375-76. When the retired employee discovered the problem and sued for various forms of relief under § 502(a)(3), the district court held that despite the company's breach of fiduciary duty, Congress had provided no remedy under ERISA. *See id.* at 377.

The Fourth Circuit vacated this portion of the district court's opinion. While plaintiff had initially requested various remedies, he had whittled his claim down to a single remedy – reinstatement. *See id.* at 384. The Fourth Circuit held that reinstatement was indeed an equitable concept "within the range of redress permitted by the phrase 'other equitable relief.'" *Id.* at 385. The circuit court disagreed with the district court's conclusion regarding the viability of this alternative, and the question on remand was simply whether reinstatement was "appropriate" in

---

amount that was actually disbursed in February 2001 is like the "restitution" sought by plaintiffs for tax exposure – a consequential harm of the alleged delay. Such an attempt to make the defendant personally liable for the difference would be "legal restitution," if not compensatory damages.

this particular case.[5] *See id.*

Plaintiffs assert that I must develop a factual record, as required on remand by the *Griggs* court, in order to determine the "appropriate equitable relief" for the alleged wrong in this case. But plaintiffs here, unlike the plaintiffs in *Griggs*, have failed to offer an alternative for relief that could be considered equitable, much less appropriate. Plaintiffs in this case cannot be "returned" or "reinstated" to the position in which they found themselves prior to the alleged delay in disbursement. The course of events that led to direct disbursement of the funds to the estate cannot be reversed. Plaintiffs are seeking money damages for the consequential harm they suffered as a result of the delay in processing the disbursement, and ERISA does not provide this remedy. It will not be necessary to determine whether the relief sought by plaintiffs is "appropriate" because the relief sought is not equitable. Defendant's motion for summary judgment will be granted.

A separate order is being entered herewith.

Date: /s/ January 22 2003

/s/ J. Frederick Motz
United States District Judge

---

[5] In addition, the Fourth Circuit left it to the sound discretion of the district court to determine what portion of the lump sum payment the plaintiff would be required to return if reinstatement was an appropriate remedy. The court allowed for the possibility that the "loss occasioned by the tax liability" could thereby be shifted back to the company. However, the mechanism for shifting the tax liability back to the employer was available only through a reduction in the amount plaintiff would have been required to return – it did not require the lower court to award damages. No such option is available in this case.